## GREER v. THAMAN et al.
### No. 9347.

Court of Civil Appeals of Texas. Galveston.
May 2, 1930.

Rehearing Denied March 19, 1931.

Dissenting Opinion April 8, 1931.

King, Wood & Morrow and W. States Jacobs, Jr., all of Houston, for appellant.

Robt. L. Sonfield, of Houston, for appellees.

GRAVES, J.

Appellant assails a $4,604.85 judgment for personal injuries in favor of appellee—$604.85 of it for medical attention, hospital bills, and nurse hire, the balance for other damages—rendered against him on a verdict in response to special issues finding there was negligence on his part that proximately caused one of his autobusses operating as a common carrier for hire between the cities of Houston and Goose Creek, on which the appellee was a fare-paying passenger, to turn over with her into a ditch, in two respects: (1) That he had failed to have the bus equipped with an adequate and sufficient wiper to keep the windshield clear for vision; (2) that the driver of the bus failed to keep a proper lookout to observe the condition of the road ahead of him.

The $604.85 allowance as expenses for medical attention, hospital bills, and nurse hire is protested against on the ground that appellee's pleadings failed to allege that such expenditures were reasonable or necessary, while the remaining $4,000 is challenged as being so grossly excessive in amount as to show that it is the result of bias, prejudice, or some other improper motive.

Both points must be overruled.

The pleadings as to the first of these sums was as follows:

"That because of said injuries, and as the direct and proximate result of said accident,

said plaintiffs have been forced to expend and incur large bills for medicines, medical and surgical services and attention, hospitalization, nurse hire, hired help, and X-ray examination, as follows: (Specifying many items, aggregating $914.55.)

"That plaintiffs will have to spend and incur in the future large sums of money for medicines, medical and surgical services and attention, hospital, nurse hire and hired help around their home, in the probable and reasonable sum of Three Thousand ($3000.00) Dollars, which said sum will be a reasonable, proper and necessary charge for such services, attention and help as she will be required to have in the future."

No special exception pointing out the lack of averment of the reasonableness thereof was directed against any of the amounts so specified; in such circumstances, the pleading has been held sufficient. Dickey v. Jackson (Tex. Civ. App.) 293 S. W. 584, and Id. (Tex. Com. App.) 1 S.W.(2d) 577.

■ The size alone of the other $4,000 award is said to indicate that some improper motive must have induced it, no misconduct nor prejudice-producing influence of any sort from any source being alleged; when the evidence reflecting the nature and extent of the injuries Mrs. Thaman received from the accident is looked to, no shock to the appellate conscience follows the ascertainment that such a sum was regarded by a jury of her peers in the proper exercise of their exclusive province as only reasonable compensation for them; without detailing the testimony, it is enough to record that the jury were fully justified in finding that they necessitated her undergoing a serious internal operation with subsequent confinement of six weeks, entailing much pain before and after, and causing an abnormal nervousness that persisted for more than one year up to the time of this trial.

■ The heart of the appeal, we think, is found in the next two very ably presented contentions that the trial court erred, (1) in refusing to submit to the jury as an issue of fact whether or not Mrs. Thaman's injuries were the result of an unavoidable accident, together with a suggested explanation of the meaning of that term, (2) in declining to add to its definition of proximate cause a further and specific explanation of the legal meaning of the expression "new and independent cause" therein contained.

Not without some hesitation, this position, too, is held untenable; in so determining it we pretermit consideration of whether appellant's appended definitions of "unavoidable accident" and "new and independent cause" to his requests to put these matters before the jury were correct in form, since they were at least sufficient direction of the court's attention to them.

Under the undisputed evidence, much of it on this phase from the driver of the bus himself, we conclude that the issue of unavoidable accident was not raised; the meaning and application of that term in Texas has been thus stated by the Commission of Appeals:

" 'An accident is inevitable if the person by whom it occurs neither has nor is legally bound to have sufficient power to avoid it or prevent its injuring another. * * * But in order to prove that an accident was inevitable it is not always enough to show that, under the circumstances existing at the time, it could not have been then avoided. It must also be the fact that the defendant was not guilty of any negligence which brought about any of those circumstances.'

"The proper application of the term is explained in 20 R. C. L. p. 20, as follows:

" 'If the injury resulting from the act could have been foreseen by a prudent person, the perpetrator will be held accountable therefor; the case is not one of accident. And conversely, if the injury could not have been foreseen, it is to be attributed, not to the actor, but to accident. Accident, then, is an occurrence that could not have been foreseen.' " Boyles v. McClure (Tex. Com. App.) 243 S. W. 1080, at page 1084.

There was sufficient support for the jury's finding of appellant's negligence in both the particulars above specified—the first of these being likewise found to have constituted a, the second the, proximate cause of "the accident and injuries"—and there is no claim to the contrary.

The mishap occurred on a dark rainy night on the way from Houston to Goose Creek at a place where the road, which was shell, while narrow had a sufficient clearance for two cars, but was fringed on its right side with a strip of wet soft dirt lying between it and a ditch of from three to five feet in depth; while being run in a manner the jury so found was negligent in that the windshield was not being kept clear for vision and the driver was not keeping a proper lookout as to the condition of the road ahead, the bus, without stopping, turned too far to the right, ran off the road on that side, struck this soft ground, and skidded into the ditch, rolling over upon its side.

Such being the situation under the jury's unattacked findings to which it must be applied, the sole circumstance out of which appellant claims the issue of unavoidable accident arose was the testimony of three witnesses, one of them the driver of the bus, to the effect that, just before this occurrence, a car from the opposite direction rounded a curve in the road ahead at a pretty fast rate of speed, and, with its bright lights shining in

the driver's face, approached this bus; that the bus was then running on the right side of the road at from twenty to twenty-five miles per hour, whereupon it began slowing down, pulled off the road too far to the right, and slid into the ditch; what are deemed the material portions of the driver's statement, as to which there is nothing contra from the others, are these:

"I didn't have any trouble at all until I got over here and met this car coming around a curve. I was on a straight road driving slowly and the car came around the curve at about sixty miles an hour, and the lights on it very bright, and when those lights got in my face I was in the dark and I slowed down, mighty near to a stand-still, and I missed the road and got off on the edge of the road a little too far and the bus slipped off this bank of about a three foot ditch and laid over on its side. * * * I know the road to Baytown as well as anybody that goes down there. * * *

"When these lights came around in my face, as I have testified, I wasn't going very fast then before I started to go slow, as I said I did; I suppose I was going about twenty miles an hour, as near as I can figure it, and I had 200 or 100 yards or more to slow up. When the light started around that curve I slowed up, and when he made this turn it came in my face and I was just about slowed up; and as a matter of fact if I had stayed to the left I wouldn't have gone in the ditch. It was a narrow road there at that time. They have built a new road since then. At that time it was barely wide enough for two cars to go through. '* * *

"I did see that car going sixty miles an hour when it started around this curve. There is curve enough there not to throw a light in your face until it gets around the curve; you don't see the car until it gets to that curve; you can't see it in that hollow. There was enough curve there to keep you from seeing it until it started around. I figured it was the best thing for me to do, slow down. * * *

"About twenty miles an hour is about the best I could have driven on this particular night, when I commenced slowing up; and I was then on the eve of stopping when I slipped in this ditch."

This testimony presents nothing more than the legal equivalent of the state of facts held in the McClure Case, supra, not to have raised an issue of unavoidable accident; just as appeared in that case, there was in this instance, not only no unknown or unexplained cause—that being excluded by the claim that the sudden appearance of the on-coming lights alone constituted the accident contended for —but that agency could not possibly have so superseded the bus driver's original negligence as to itself become the sole proximate cause of the injury, since it was admittedly not of such character that he could not have foreseen or anticipated its happening, nor could it have broken the chain of sequence so found to be still persisting between that negligence and the result of the spill; in other words, whatever its disconcerting influence, under his own testimony it was wholly subjective, reflecting only a state of mind on his part, not any real outside danger, hence simply contributed the necessary condition for making injuriously effective the prior failure to properly equip the windshield and observe the road, thereby at most constituting merely a concurrent and contributing cause along with those culpable acts; its presence therefore could not have exculpated them. Boyles v. McClure, supra, and authorities there cited.

This net result of what transpired is made entirely clear from the driver's admission, "as a matter of fact if I had stayed to the left I wouldn't have gone in the ditch"—that is, what amounts to the same thing, if he had either stopped along or continued pursuing the course he was going before turning out of the road to the right, the approaching car would have passed him unscathed; he further admitted knowing the road "as well as anybody that goes down there"—knew all the other conditions, including the rainy weather, so not only could but should have anticipated such a development; that he in fact did so is shown by his choosing to keep going when the lights appeared.

■ On like or kindred considerations and authorities, no prejudicial error was involved, we think, in the declination to add the requested explanation as to the meaning of "new and independent cause"; under what has just been given as the undisputed facts obtaining, there could have been no such ground of defense in issue in the case, notwithstanding the trial court's use of those words in its definition of proximate cause, which appears to have been incidental only; neither can we agree with appellant's counsel in so construing R. S. article 2189 as to make it require a proper definition of the legal meaning of that expression after being so employed, regardless of whether or not the evidence raised any such issue; it seems to us to only enjoin upon the trial court such a definition of any legal terms employed as is essential to a proper understanding by the jury of the particular special issue submitted to them—not to require vel non a definition, when the term it explained, however fixed its significance in law may have become, constitutes mere verbiage or recitation in the charge and relates to something neither submitted nor requested to be, which the evidence in the case at hand fails to make a material issue of fact out of; the explanation and definition of a legal term that so amounts to nothing but a detached abstraction could not reasonably be considered nec-

essary to enable the jury to properly pass upon concrete questions of fact arising out of evidence before them in response to specific inquiries.

Such was this situation; while appellant's brief suggests that the foregoing testimony of the three witnesses in reference to the sudden appearance of the bright lights from the approaching automobile would have justified a finding that it constituted a new and independent cause of the ensuing injury, no issue of that sort was either submitted or requested, the case presented to the jury being simply one of whether or not the appellant as a carrier had—directly or through his agent, the bus driver—exercised that degree of care the law required for the safety of the appellee, his passenger; in order to guide them in properly determining that question, the court gave this explanation and definition of "proximate cause," as applicable to the negligence alleged:

"Proximate cause of an injury, as the term is used in this charge, in its legal signification is a cause which in a natural and continuous sequence unbroken by any new and independent cause, produces an event, and without which the event would not have occurred.

"But in order to warrant a finding that negligence is a proximate cause of an injury, it must appear from the evidence that the injury was a natural and probable consequence of the negligence and ought to have been foreseen as likely to occur by a person of ordinary prudence in the light of attending circumstances."

Appellant's refused definition of the language "new and independent cause" thus appearing, which is the sole matter here complained of, was as follows: "In this case you are instructed that by the expression 'new and independent cause' contained in the court's main charge, is meant an act or event disconnected from and independent of the original cause and which intervenes and produces the result and without the intervention of which the original cause would have been ineffectual to have produced the result complained of."

Unless our view that article 2189 only requires such an explanation of those legal terms materially involved in the cause as is necessary to the proper rendition of a verdict on issues the evidence raises is erroneous, plainly the proposed definition was correctly refused, the only claimed foundation of fact for it being the same thing that was offered as raising an issue of unavoidable accident, that the lights of the other car furnished the new and intervening cause so sought to be defined; under the undisputed facts about and the authorities ruling it, already commented upon, that matter could not have involved any such effect, for

the reasons before given, Boyles v. McClure, supra, Shippers, etc., Co. v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032 (writ refused); the further injection of the expression to which it was exclusively referable by detailed definition, therefore, could have led nowhere, unless perhaps to the confusion of the jury.

Complaints at the refusal of a number of requested special issues relating to alleged contributory negligence on the appellee's part, and the admission of an answer from Dr. Denman to a question as to whether a medical book made a certain statement, are overruled without detailed discussion; eight special issues were given by the court touching this claim of contributory negligence, which seem to us to have fairly presented the issue raised thereon under the pleadings and evidence.

If there are other properly presented contentions not in effect disposed of by what has been said, they are overruled, since we conclude from the record as a whole that no prejudicial error has been pointed out.

Pursuant to these conclusions, the trial court's judgment has been affirmed.

Affirmed.

### On Motion for Rehearing.

PER CURIAM.

Rehearing denied.

PLEASANTS, C. J. (dissenting).

When we originally decided this case and our original opinion was prepared I entertained grave doubts of the soundness of our conclusions. Upon further consideration of the questions on motion for rehearing I have reached the conclusion that appellant's contentions that under the evidence shown by the record the issue of unavoidable accident should have been submitted to the jury, and that the charge of the court should have defined the meaning of the term "new and independent cause" used in the charge, should be sustained. As shown in our original opinion the only negligence found by the jury was the failure of appellant to have his bus equipped with a sufficient wiper to keep the windshield clear for vision, and the failure of the driver of the bus to keep a proper lookout to observe the condition of the roadway. Each of these acts of negligence was found by the jury to be the proximate cause of plaintiff's injuries.

The only evidence as to the direct cause of the accident was the following: The plaintiff testified: "Coming now to the place where the accident occurred: He was driving thirty-five miles an hour; it was on a bad night and the windshield was dark and cloudy and he really couldn't see very well,

382

and he just ran off the road—the bus ran off the road, the right hand side of the road, running into a ditch about four or five feet deep."

The bus driver explained the causes that brought about the mishap as follows: "I was on a straight road driving slowly and the car came around the curve at about sixty miles an hour, and the lights on it were very bright, and when those lights got in my face I was in the dark and I slowed down, mighty near to a standstill, and I missed the road and got off on the edge of the road a little too far and the bus slipped off this bank of about a three foot ditch and laid over on its side."

Miss McCoy, who was riding on the front seat of the bus, testified with reference to the driver's action as the approaching car rounded the turn, as follows: " * * * And he said, 'I can't drive against those cars, those lights; I am going to pull up and stop for those cars to go by.' So he shifted the gears and pulled up on the side of the road and the bus didn't turn over with a jolt but just slipped over; it just eased over."

Mrs. Martin, another passenger on the front seat testified: "When this bus rolled over in the ditch that night it was just rolling, barely moving; it just rolled over on the side in the ditch. * * * Mr. Wright pulled over to the side of the road and stopped, almost came to a standstill on the edge of the road, with the front wheels on the right hand side; the ground gave out from under the right front wheel and that let the car roll when the dirt gave down under that right front wheel, and it rolled and just turned on its side in the ditch."

John Lane, who inspected the scene of the accident on the following day and drove the bus back to town, explained the upset in these words: "The dirt gave way under the wheels."

It will be here noted that there was no finding of the jury that the driver of the bus was negligent in driving at a too rapid rate of speed, and, as before stated, they only found negligence against the driver in his failure to keep a proper lookout.

It is obvious that, if the sudden appearance around the curve in the road of the approaching automobile with the headlights so glaring as to make it impossible for the driver to see the roadway and keep off its insecure unpaved portion which gave way under the weight of the truck caused it to slide into the ditch, neither of the acts of negligence found by the jury could have been the proximate cause of plaintiff's injury. This was an ultimate fact issue in the case as made by the pleadings and evidence and should have been submitted to the jury. The

trial court seems to have recognized the propriety, if not the necessity, of submitting this issue by his definition of proximate cause given in his charge to the jury. The definition was technically accurate as applied to the fact issues raised by the evidence, but the legal meaning of the term "new and independent cause" is not presumed to be known and understood by a layman, and this legal meaning should upon the request of the defendant have been properly explained to the jury. This question has been expressly decided in favor of appellant's contentions in the following cases: Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570; Thomas v. Goulette (Tex. Civ. App.) 12 S.W.(2d) 829; Stamper v. Scholtz (Tex. Civ. App.) 17 S.W.(2d) 184; Rio Bravo Oil Co. v. Matthews (Tex. Civ. App.) 20 S.W.(2d) 342; Texas Electric Ry. v. Scott (Tex. Civ. App.) 21 S.W.(2d) 24.

I think the motion for rehearing should be granted, and the judgment reversed, and the cause remanded for retrial.